ORIENT ALLIANCE SHIPPING COMPANY LIMITED

- and -

HELLENIC BANK PUBLIC COMPANY LIMITED

---

Deed of Covenants
in respect of
m/v "ORIENT ALLIANCE"

---

CHRYSSES DEMETRIADES & CO. LLC
13 Karaiskakis, Street
CY-3032 Limassol - Cyprus
P.O.Box 50132
3601 Limassol - Cyprus

EXHIBIT 2

# INDEX

| CLAUSE | SUBJECT MATTER | PAGE |
|---|---|---|
| 1 | DEFINITIONS AND INTERPRETATION | 2 |
| 2 | COVENANT TO PAY AND PERFORM | 11 |
| 3 | MORTGAGE AND CHARGE | 12 |
| 4 | CONTINUING SECURITY | 13 |
| 5 | REPRESENTATIONS AND WARRANTIES | 14 |
| 6 | INSURANCE COVENANTS | 15 |
| 7 | VESSEL COVENANTS | 20 |
| 8 | POWERS OF MORTGAGEE TO PROTECT SECURITY AND REMEDY DEFAULTS | 26 |
| 9 | EVENTS OF DEFAULT | 27 |
| 10 | ENFORCEMENT AND MORTGAGEE'S POWERS | 31 |
| 11 | PROTECTION OF THIRD PARTIES | 33 |
| 12 | APPLICATION OF PROCEEDS | 33 |
| 13 | NO WAIVER | 35 |
| 14 | DELEGATION | 35 |
| 15 | POWER OF ATTORNEY | 35 |
| 16 | WAIVER | 35 |
| 17 | INDEMNITY | 36 |
| 18 | COSTS | 37 |
| 19 | NOTICES | 37 |
| 20 | CUMULATIVE REMEDIES | 38 |
| 21 | SEVERABILITY | 38 |
| 22 | FURTHER ASSURANCES | 39 |
| 23 | TAXES | 39 |
| 24 | ASSUMPTION OF MANAGEMENT | 40 |
| 25 | MISCELLANEOUS | 40 |
| 26 | LAW AND JURISDICTION | 41 |
| 27 | ENVIRONMENT | 42 |
| | EXECUTION | 44 |
| | ANNEX I | 45 |
| | ANNEX II | 46 |

**THIS DEED OF COVENANTS** is made the 30ᵗʰ day of September , 2015 between **ORIENT ALLIANCE SHIPPING COMPANY LIMITED**, a company incorporated in accordance with the laws of Malta, having its registered office at 171, Old Bakery Street, Valletta, Malta (hereinafter called the "Mortgagor" which expression shall include its successors and permitted assigns) of the one part and **HELLENIC BANK PUBLIC COMPANY LIMITED**, whose registered office is at Corner of Limassol Avenue and 200 Athalassa Avenue, 2025 Strovolos, Nicosia, Cyprus acting through its branch at 131 Arch. Makarios Avenue, 2ⁿᵈ Floor, 3508 Limassol, Cyprus (hereinafter called the "Mortgagee" which expression shall include its successors and assigns) of the other part.

W H E R E A S : -

1.      The Mortgagor is the sole legal beneficial and unencumbered owner of one hundred one hundredth (100/100th) shares in the motor vessel m/v "ORIENT ALLIANCE", IMO No. 9496331 now registered under the laws and flag of Malta of the following dimensions and tonnages: length 172.93 metres, breadth 30.00 metres, depth 14.70 metres, 23426 tons gross and 11082 tons net registered, which, together with all shares and interest therein and the engines machinery boats tackle outfits spare gear fuels consumable and other stores belongings and appurtenances whether on board or ashore including those which may hereafter be put on board or become appurtenant to or intended to be used for the said vessel if on shore, is hereinafter referred to as the "Vessel".

2.      Pursuant to a loan agreement dated the 30ᵗʰ day of September, 2015 made between the Mortgagor, as borrower and  the Mortgagee, as lender (the said loan agreement as the same may from time to time be amended, supplemented or varied being hereinafter referred to as the "Loan Agreement"), the Mortgagee has agreed to make available to the Mortgagor, a loan facility of up to the aggregate amount of United States Dollars twenty million five hundred thousand (USD20,500,000.00) in accordance with and subject to the detailed terms and conditions in the Loan Agreement set forth and contained.

3.      By a guarantee dated the 30ᵗʰ day of September 2015 (hereinafter as the same may from time to time be amended, supplemented or varied being hereinafter referred to as the "Guarantee A") between the Mortgagor and the Mortgagee, the Mortgagor has guaranteed the obligations and liabilities of Orient Tribune Shipping Company Limited of Limassol, Cyprus (the "Other Borrower A") under or in connection with (inter alia) the Other Loan Agreement (as hereinafter defined).

4. By a guarantee dated the 30th day of September 2015 (hereinafter as the same may from time to time be amended, supplemented or varied being hereinafter referred to as the "Guarantee B") between the Mortgagor and the Mortgagee, the Mortgagor has guaranteed the obligations and liabilities of Interorient Navigation Company Limited of Limassol, Cyprus (the "Other Borrower B") under or in connection with (inter alia) the Other Borrower B Agreements (as hereinafter defined).

5. It is a condition to the Mortgagee making the Facility (as hereinafter defined) available to the Mortgagor under the Loan Agreement, continuing to make the Other Facility A (as hereinafter defined) available to the Other Borrower A under the Other Loan Agreement and continuing to make the Other Facilities B (as hereinafter defined) available to the Other Borrower B under the Other Borrower B Agreements, that the Mortgagor shall execute and deliver to the Mortgagee, inter alia, a first priority Maltese statutory mortgage in account current form over the whole of the Vessel and a deed of covenants collateral to the said mortgage as security for (inter alia) the due payment of the Indebtedness (as hereinafter defined) and the performance of all the obligations of the Mortgagor under the Loan Agreement, the Guarantee A and the Guarantee B.

6. The Mortgagor has contemporaneously with the execution of this Deed duly executed in favour of the Mortgagee the said first priority Maltese statutory mortgage (hereinafter called the "Statutory Mortgage") of One hundred one hundredth (100/100th) shares in the Vessel.

7. This Deed is supplemental to the Loan Agreement, the Guarantee A, the Guarantee B and to the Statutory Mortgage and to the security created thereby.

NOW THIS DEED WITNESSETH AND IT IS HEREBY AGREED AND DECLARED as follows:-

## 1. DEFINITIONS AND INTERPRETATION

1.1 Words and expressions defined in the Loan Agreement shall, unless otherwise expressly provided herein or the context otherwise requires, have the same meanings when used in this Deed, including the Recitals.

1.2 In this Deed (including the Recitals) unless the context otherwise requires the following expressions shall have the following meanings:-

**"Account Current"** means when used in this Deed and in the Statutory Mortgage any indebtedness of the Mortgagor in favour of the Mortgagee arising and determinable in accordance with the Loan Agreement, the Guarantees and the Security Documents and the amount of the Indebtedness may be established by means of a certificate issued by the Mortgagee to the Mortgagor wherein the balance due at any given time is specified and such sum shall be the certain and liquidated sum due by the Mortgagor to the Mortgagee.

**"Assignment"** means a general assignment in respect of the Earnings, Insurances and Requisition Compensation entered or to be entered into between the Mortgagee and the Mortgagor pursuant to the Loan Agreement.

**"Charged Assets"** means and includes the Vessel, the Insurances, the Earnings and the Requisition Compensation.

**"Deed of Covenants", "this Deed" and "Deed"** mean and include this Deed and, where the context admits, this Deed and the Statutory Mortgage.

**"Default Rate"** means interest at the rate referred to in or determined and certified by the Mortgagee as provided in Clause 7 (H) of the Loan Agreement. A certificate by the Mortgagee as to the Default Rate applicable from time to time shall be conclusive and binding on the Mortgagor in determining the Default Rate.

**"Earnings"** means all moneys whatsoever due or to become due, actually or contingently, to the Mortgagor at any time during the Security Period arising out of, or in relation to, the use or operation of the Vessel including (but without limiting the generality of the foregoing) all freights, hires and any other amounts whatsoever which may at any time be earned by, or become payable to or for the account of the Mortgagor arising out of or as a result of the ownership, management and/or operation of the Vessel by the Mortgagor or its agents, or under or in relation to any charter, contract of carriage or other contract (including salvage and towage contracts) for the use of the Vessel and all compensation receivable in respect of any requisition for hire of the Vessel and all moneys which are at any time payable under all or any of the Insurances in respect of Earnings.

**"Environmental Affiliate"** means an agent, employee, independent contractor, sub-contractor or other person in a contractual relationship with the Mortgagor relating to the Vessel or its carriage of cargo or its operation whose acts or omissions would have a Material Adverse Effect.

**"Environmental Approvals"** means all approvals, licences, permits, exemptions or authorisations required under applicable Environmental Laws.

**"Environmental Claim"** means: (a) any claim by, or directive from, any applicable governmental, judicial or other regulatory authority alleging breach of, or non-compliance with, any Environmental Laws or Environmental Approvals or otherwise howsoever relating to or arising out of an Environmental Incident; or (b) any claim by any other third party howsoever relating to or arising out of an Environmental Incident; and, in each such case, "claim" shall mean a claim for damages, cleanup costs, compliance, remedial action or otherwise.

**"Environmental Incident"** means: (a) any release of Material of Environmental Concern from the Vessel; (b) any incident in which Material of Environmental Concern is released from a vessel other than the Vessel and which involves collision between the Vessel and such other vessel or some other incident of navigation or operation, in either case, where the Vessel, the Mortgagor or the managers, for the time being of the Vessel, are actually or allegedly at fault or otherwise liable (in whole or in part); or (c) any incident in which Material of Environmental Concern is released from a vessel other than the Vessel and where the Vessel is actually or potentially liable to be arrested as a result and/or where the Mortgagor or the managers, for the time being of the Vessel, are actually or allegedly at fault or otherwise liable.

**"Environmental Laws"** means all local, state, provincial, national and international laws, regulations, treaties and conventions (including any amendments and/or protocols thereto) for the time being in force pertaining to the pollution or protection of human health or the environment (including ambient air, surface water, ground water, land surface or subsurface strata and all or any part of national and international waters (howsoever called)), including laws, regulations, treaties and conventions (including any amendments and/or protocols thereto) for the time being in force relating to the Release (or threatened Release) of Material of Environmental Concern (including, without limitation, the United States Oil Pollution Act of 1990 and any comparable laws of the individual States of the United States of America).

**"Event of Default"** means any failure by the Mortgagor or any other party to the Security Documents (other than the Mortgagee) to perform, observe, comply with or discharge any of the covenants, terms, conditions and obligations of the Security Documents or any of them on their part to be performed, observed, complied with or discharged and includes without limitation to the generality of the foregoing any of the events or circumstances set forth in Clause 9 of this Deed.

**"Facility"** means the loan facility up to the aggregate amount of USD20,500,000.00 (twenty million five hundred thousand United States Dollars) first referred to in the second recital hereof, or any part thereof, advanced or made available or to be advanced or made available by the Mortgagee to the Mortgagor pursuant to the Loan Agreement or, where the context so admits or requires, the principal amount thereof plus accrued interest outstanding at any relevant time, in the currency or currencies in which the same is outstanding under the Loan Agreement.

**"Guarantee A"** means the guarantee first referred to in the third recital hereto as the same may from time to time hereafter be amended, supplemented or varied, as provided therein.

**"Guarantee B"** means the guarantee first referred to in the fourth recital hereto as the same may from time to time hereafter be amended, supplemented or varied, as provided therein.

**"Guarantees"** means Guarantee A and Guarantee B.

**"Indebtedness"** means the aggregate of the Facility, the Other Facilities, any sums due under the Guarantees, accrued interest thereon and all sums and liabilities which are or may become from time to time payable or owing by the Mortgagor to the Mortgagee on the Account Current and/or under or in connection with the Security Documents or any of them whether actually or contingently presently or in the future.

**"Insurances"** means all policies and contracts of insurance (which expression includes all entries of the Vessel in a protection and indemnity or mutual hull or war risks associations and Mortgagee's Interest Insurance) or such other arrangements by way of insurance which are from time to time taken out or entered into by or for the benefit of the Mortgagor (whether in the sole name of the Mortgagor or in the joint names of the

Mortgagor and others) in respect of or in connection with the Vessel or her Earnings and all benefits thereof including all claims of whatsoever nature and return of premiums.

**"Loan Agreement"** means the loan agreement mentioned in the second recital hereto, as the same may from time to time hereafter be amended, supplemented or varied.

**"Major Casualty"** means any casualty to the Vessel in respect of which the claim or the aggregate of the claims against all insurers exceeds 5% of the hull insured value of the Vessel.

**"Material of Environmental Concern"** means and includes all pollutants, contaminants, toxic substances, oil and hazardous substances as may be defined in any applicable Environmental Laws.

**"Material Adverse Effect"** means any event or circumstance which, in the opinion of the Mortgagee:

(a)     is likely to materially and adversely affect the Mortgagor's ability to perform or otherwise comply with all or any of its obligations in respect of the Indebtedness under the Loan Agreement and/or any of the other Security Documents and/or this Deed or is likely to materially and adversely affect the security provided to the Mortgagee in respect of the Indebtedness or any part thereof; or

(b)     is likely to materially and adversely affect the business, operations, property, condition (financial or otherwise) or prospects of the Mortgagor; or

(c)     is likely to result in the Loan Agreement and/or any of the other Security Documents and/or this Deed not being legal, valid and binding, and enforceable in accordance with its terms against, the Mortgagor,

and the same or similar meaning shall be attributed to this term in relation to any Environmental Affiliate.

**"Permitted Liens"** means:

(a)     any lien for master's, officer's or crew's wages outstanding in the ordinary course of trading; and

(b)    any lien for salvage; and

(c)    any ship repairer's liens for a sum not (except with the consent of the Mortgagee) exceeding 5% of the hull insured value of the Vessel.

**"Release"** means an emission, spill, release or discharge into or upon the air, surface water, groundwater, or soils, of any Material of Environmental Concern for which the Mortgagor has any liability under any Environmental Law, except in accordance with a valid Environmental Approval.

**"Requisition Compensation"** means and includes all moneys or other compensation payable during the Security Period by reason of requisition for title or other compulsory acquisition of the Vessel otherwise than by requisition for hire.

**"Security Documents"** means each and any of:

(a)    the Loan Agreement, the Guarantees, the Other Loan Agreement, the Other Borrower B Agreements, this Deed, the Statutory Mortgage, the Assignment and all other documents defined in the Loan Agreement as "Security Documents";

(b)    any and all other documents from time to time creating, evidencing or entered into as security for, or guaranteeing, the Indebtedness or any part thereof;

(c)    any document entered into pursuant to a document in paragraphs (a) or (b) above; and

(d)    any other document designated as such in writing by both the Mortgagee and  the Mortgagor.

**"Statutory Mortgage" or "Mortgage"** means the first priority Maltese mortgage mentioned in the sixth recital hereto.

**"Security Period"** means the period commencing on the date of this Deed and terminating upon discharge of the security created by the Security Documents by irrevocable and unconditional payment in full of all moneys payable thereunder or in connection therewith or upon the discharge (to the absolute satisfaction of the Mortgagee) of all and any liability (actual or contingent) of the Mortgagor under or in connection with the Loan Agreement and the Guarantees.

**"Other Agreements"** means the Other Loan Agreement and the Other Borrower B Agreements.

**"Other Borrower A"** means Orient Tribune Shipping Company Limited of Limassol, Cyprus.

**"Other Borrower B Agreements"** means the Other Overdraft Facility Agreements and the Other Borrower B Loan Agreements.

**"Other Borrower B Loan Agreements"** means (a) a certain loan agreement dated 1 December 2008 and made between the Other Borrower B, as borrower and the Mortgagee, as lender in relation to item (c) in the definition of the term Other Facilities B hereinbelow and (b) a certain other loan agreement dated 27 September 2013 and made between the Other Borrower B, as borrower and the Mortgagee, as lender in relation to item (d) in the definition of the term Other Facilities B hereinbelow

**"Other Borrower B"** means Interorient Navigation Company Limited of Limassol, Cyprus.

**"Other Borrowers"** means Other Borrower A and Other Borrower B.

**"Other Facility A"** means the loan facility originally up to the aggregate amount of USD22,575,000.00 (twenty two million five hundred seventy five thousand United States Dollars) or any part thereof, advanced or made available or to be advanced or made available by the Mortgagee to the Other Borrower A pursuant to the Other Loan Agreement, or where the context so admits or requires, the principal amount thereof plus accrued interst outstanding at any relevant time, in the currency or currencies in which the same is outstanding under the Other Loan Agreement.

**"Other Facilities B"** means collectively (a) the overdraft facility originally up to the aggregate amount of USD17,000,000.00 (seventeen million United States Dollars) and an extraordinary limit of USD150,000.00 (one hundred fifty thousand United States Dollars), which has been or is to be reduce to the amount of approximately USD7,534,000.00 (seven million five hundred thirty four thousand United States Dollars) or its equivalent in Euro, or any part thereof, advanced or made available or to be advanced or made available by the Mortgages to the Other Borrower B pursuant to

the relevant Other Overdraft Facility Agreement, or where the context so admits or requires, the principal amount thereof plus accrued interest outstanding at any relevant time, in the currency or currencies in which the same is outstanding under the relevant Other Overdraft Facility Agreement, (b) the overdraft facility up to the amount of USD3,000,000.00 (three million United States Dollars) or its equivalent in Euro, or any part thereof, advanced or made available or to be advanced or made available by the Mortgagee to the Other Borrower B pursuant to the relevant Other Overdraft Facility Agreement, or where the context so admits or requires, the principal amount thereof plus accrued interest outstanding at any relevant time, in the currency or currencies in which the same is outstanding under the relevant Overdraft Facility Agreement, (c) the loan facility originally up to the amount of USD30,773,960.00 (thirty million seven hundred seventy three thousand nine hundred sixty United States Dollars) or any part thereof, advanced or made available or to be advanced or made available by the Mortgagee to the Other Borrower B pursuant to the relevant Other Borrower B Loan Agreement, or where the context so admits or requires, the principal amount thereof plus accrued interest outstanding at any relevant time, in the currency or currencies in which the same is outstanding under the relevant Other Borrower B Loan Agreement and (d) the loan facility up to the amount of USD815,000.00 (eight hundred fifteen thousand United States Dollars) or any part thereof, advanced or made available or to be advanced or made available by the Mortgagee to the Other Borrower B pursuant to the relevant Other Borrower B Loan Agreement, or where the context so admits or requires, the principal amount thereof plus accrued interest outstanding at any relevant time, in the currency or currencies in which the same is outstanding under the relevant Other Borrower B Loan Agreement.

**"Other Facilities"** means Other Facility A and Other Facilities B.

**"Other Loan Agreement"** means the loan agreement dated 21 December 2009 and the supplemental agreements thereto No.1, No.2, No.3, No.4, No.5, No.6 and No.7 dated 29 March 2011, 24 June 2011, 8 August 2011, 22 September 2011, 18 November 2011, 27 September 2013 and 30 September 2015 made between the Other Borrower A, as borrower and the Mortgagee, as lender in relation to the Other Facility A, as the same may from time to time hereafter be further amended, supplemented or varied.

**"Other Overdraft Facility Agreements"** means (a) a certain overdraft and/or other facility agreement dated 1 December 2008 and connected with the overdraft facility

account number 219-07-187207-02 of the Other Borrower B with the Mortgagee, made between the Other Borrower B, as borrower and the Mortgagee, as lender in relation to item (a) in the definition of the term Other Facilities B hereinabove, and (b) a certain other overdraft and/or other facility agreement dated 27 September 2013 made between the Other Borrower B, as Borrower and the Mortgagee, as lender in relation to item (b) in the definition of the term Other Facilities B hereinabove, as each of the said agreements has been amended, supplemented or varied and as each of the same may from time to time hereafter be further amended, supplemented or varied.

**"Total Loss"** means:

(a)     actual or constructive or compromised or agreed or arranged total loss of the Vessel;

(b)     requisition for title or other compulsory acquisition of the Vessel other than requisition for hire;

(c)     capture, seizure, arrest, restraint, detainment, detention or confiscation of the Vessel by any government or by persons acting or purporting to act on behalf of any government unless the Vessel be released and restored to the Mortgagor from such capture, seizure, arrest, restraint, detainment, detention or confiscation within thirty (30) days after the occurrence thereof.

1.3 In Clause 6:

**"excess risks"** means the proportion of claims for general average and salvage charges and under the ordinary running-down clause which is not recoverable in consequence of the value at which the Vessel is assessed for the purposes of such claims, exceeding her insured value.

**"protection and indemnity risks"** means the usual risks covered by a protection and indemnity association including the proportion not recoverable in case of collision under the ordinary running-down clause, and liability for third party risks, and pollution, leakage and spillage.

**"war risks"** means and includes the risk of mines or torpedoes and all risks covered by the standard form of English marine policy with Institute War and Strikes Clauses (Time) (1/10/83) attached or similar cover.

1.4     Headings are for convenience of reference only.

1.5     Where the context admits, the singular includes the plural and vice versa.

1.6     Any reference in this Deed to the Security Documents or any one or more of them or to any other document, is to be construed as a reference to such document as amended, supplemented novated varied or replaced from time to time.

1.7     References to any enactment or statutory provision shall be construed as references to such enactment or provision as replaced or amended or re-enacted from time to time

1.8     The rights and security conferred hereby are additional to those conferred on the Mortgagee by other documents in connection with the Indebtedness.

1.9     This Deed shall be read together with the other Security Documents but, in case of any conflict between the Loan Agreement and this Deed the provisions of the Loan Agreement shall prevail.

## 2. COVENANT TO PAY AND PERFORM

2.1     The Mortgagor hereby irrevocably and unconditionally covenants with the Mortgagee:-

2.1.1     to repay or cause to be repaid to the Mortgagee the Facility by the installments, at the times and in the manner specified in the Loan Agreement and in the currency or currencies in which the same is, for the time being, payable thereunder; and

2.1.2     to pay all sums of any nature whatsoever payable by the Mortgagor under the Guarantees in accordance with the terms of the Guarantees and to pay all other amounts due by the Mortgagor under this Deed or any of the other Security Documents to which the Mortgagor is a party or stated in this Deed to be payable by the Mortgagor or recoverable from the Mortgagor or in respect of which the

Mortgagor agrees in this Deed to indemnify the Mortgagee at the times and in the manner specified herein or therein or if no time has been specified or in case of sums expressed to be payable on demand, upon receipt of notice of demand thereof being made to the Mortgagor.

2.1.3   to pay interest on the Facility and/or the Other Facilities and on any other sums of money on which interest is payable pursuant to the Loan Agreement and/or the Guarantees and the other Security Documents to which the Mortgagor is or is to be a party (and interest on any unpaid interest thereon) at the rate or rates, in the currency or currencies, at the times and in the manner specified in the Loan Agreement and/or the Guarantees and such other Security Documents or agreed or to be agreed between the Mortgagor and the Mortgagee pursuant thereto; and

2.1.4   to pay all costs, charges, expenses, losses, liabilities or other moneys as are stated in this Deed to be payable by the Mortgagor to or recoverable from the Mortgagor by the Mortgagee, (or in respect of which the Mortgagor agrees in this Deed to indemnify the Mortgagee) at the times and in the manner specified in this Deed and to pay interest thereon at the Default Rate from the time they were paid or incurred by the Mortgagee until full payment (both before and after judgment); and

2.1.5   to pay each and every other sum of money which may be or become owing to the Mortgagee under the Loan Agreement, the Guarantees, this Deed and the other Security Documents to which the Mortgagor is or is to be a party or otherwise on the Account Current at the times and in the manner specified herein or therein.

2.2     The Mortgagor hereby covenants to observe perform and comply with all and singular the covenants conditions and agreements herein and in the other Security Documents expressed or implied on its part to be observed performed or complied with for so long as any moneys payable under the Loan Agreement, the Guarantees or the other Security Documents remain due or owing to the Mortgagee.

## 3. MORTGAGE AND CHARGE

As security for the payment of the Indebtedness the Mortgagor, as absolute owner of the Vessel, hereby grants to the Mortgagee a first priority mortgage over the Vessel and mortgages and charges and agrees to mortgage and charge the Vessel to and in favour of the Mortgagee.

## 4. CONTINUING SECURITY

4.1      The Statutory Mortgage and these presents shall be held by the Mortgagee as security for the payment of the Indebtedness and of all moneys which may be or become due or payable on the Account Current or under or in respect of any of the provisions hereof and of the other Security Documents to which the Mortgagor is or is to be a party or which may otherwise be or become due or be accruing due from the Mortgagor to the Mortgagee including any liability which the Mortgagor may from time to time be under in respect of the Vessel it being declared and agreed that the security constituted by the Statutory Mortgage and this Deed shall be continuing and not be satisfied by any intermediate payment or satisfaction of the whole or any part of the moneys aforesaid and the security so constituted shall be in addition to and shall not be in any way prejudiced or affected by any collateral or other security now or hereafter held by the Mortgagee for all or any part of the moneys hereby and thereby secured. PROVIDED ALWAYS that on payment to the Mortgagee of all such moneys as aforesaid and interest thereon in pursuance of the covenants in that behalf herein and in the Loan Agreement and the Guarantees contained and all other moneys payable under the Security Documents and secured hereby or by the Statutory Mortgage and provided further that the Mortgagor is not in default under any one of the Security Documents then the Statutory Mortgage and this Deed shall if so required by the Mortgagor be discharged at the cost of the person or persons then entitled to have the same discharged and the security created thereby and by these presents be terminated.

4.2      The security created by this Deed and the other Security Documents shall not be impaired affected or discharged by reason of any time or other indulgence granted by the Mortgagee in respect of the Indebtedness or any forbearance (whether as to payment time performance or otherwise howsoever) which might but for this provision have any such effect or by reason of any variation in the terms of any of the Security Documents or by reason of the unenforceability invalidity or termination of or any irregularity in the Loan Agreement and the Guarantees or any of the other Security Documents or the execution thereof by any party thereto or any deficiency in the power of any party thereto to enter into and perform its obligations thereunder and should any obligation or purported obligation of any  such party which if enforceable or valid or continuing would be secured by this Deed and  the Statutory  Mortgage be or become wholly or in part unenforceable or invalid or terminated for any reason whatsoever the Mortgagor will keep  the Mortgagee  fully  indemnified  against  any  expenses,  payments,

disbursements, costs, losses or damages suffered by it as a result of any failure by such party to perform any such obligation or purported obligation.

4.3 Any certificate submitted by the Mortgagee to the Mortgagor as to the amount owing in respect of the Indebtedness or any part thereof shall (in the absence of manifest error) be conclusive and binding on the Mortgagor.

## 5. REPRESENTATIONS AND WARRANTIES

5.1 The Mortgagor hereby represents and warrants to the Mortgagee that:-

    5.1.1 the Mortgagor is the sole legal and beneficial owner of all shares of and in the Vessel, it has power and is entitled to have the Vessel registered under the laws of Malta, it has power to mortgage the said shares and none of the said shares or the Charged Assets are subject to any mortgage, charge, lien, encumbrance or other security interest (save as constituted by the Security Documents); and

    5.1.2 the Mortgagor has not sold or transferred or agreed to sell or transfer the Vessel or any share therein; and

    5.1.3 the entry into, execution, delivery and performance of this Deed, the Statutory Mortgage and the other Security Documents to which the Mortgagor is or is to be a party, do not and will not violate, contravene or exceed the powers granted to the Mortgagor by, or any provision of, any law or regulations in any jurisdiction to which the Mortgagor is subject or the memorandum and articles of association or other constitutional documents of the Mortgagor; and

    5.1.4 it has all the necessary powers and authority to mortgage the Vessel and to execute, deliver and carry out the terms and conditions of the Statutory Mortgage and this Deed and has taken all necessary corporate or other actions to authorise the due execution and delivery of the Statutory Mortgage and this Deed and that these will be legal, valid and binding obligations of the Mortgagor enforceable in accordance with their respective terms; and

    5.1.5 the Mortgagor has filed all the necessary documents and received or retained every consent, authorisation, licence or approval of any national or public body

or authority required to authorise or required in connection with the execution, delivery, performance, validity or enforceability of the Statutory Mortgage and this Deed or the taking of any action hereby contemplated and all such consents, authorisations, licences and approvals are and will continue during the Security Period to be in full force and effect.

5.2 The Mortgagor hereby further represents and warrants to the Mortgagee that:-

5.2.1 all applicable Environmental Laws and Environmental Approvals relating to the Vessel, its operation and management and the business of the Mortgagor (as now conducted and as reasonably anticipated to be conducted in the future) have been complied with;

5.2.2 no Environmental Claim has been made or threatened against the Mortgagor, the managers, for the time being, of the Vessel, or otherwise in connection with the Vessel; and

5.2.3 no Environmental Incident has occurred.

5.3 The representations and warranties in Clause 5.1 and 5.2 above shall survive the execution of this Deed and shall be deemed to be repeated by the Mortgagor on and as of each day from the date of this Deed until all amounts due or to become due to the Mortgagee under the Security Documents or hereunder shall have been repaid, with respect to the circumstances existing at each such day.

## 6. INSURANCE COVENANTS

6.1 The Mortgagor hereby expressly covenants and agrees with the Mortgagee and undertakes throughout the Security Period at the Mortgagor's expense and at no cost to the Mortgagee:-

6.1.1 To insure and keep the Vessel insured, against:- (a) hull and machinery, fire and usual marine risks (including excess risks); (b) war risks; (c) protection and indemnity risks (including pollution risks) and/or third party liability and passengers liability to the full satisfaction and discretion of the Mortgagee in accordance with the market practice; (d) loss of hire risks ( including risk of loss of earnings); and (e) any other risks which the Mortgagee may from time to time require.

6.1.2   To effect such insurances (i) in such currency as may from time to time be approved in writing by the Mortgagee (ii) for such amounts as shall from time to time be approved in writing by the Mortgagee (but in the cases referred to in sub-clause 6.1.1 (a), (b) and (d)) above for not less than the greater of (x) the full market value of the Vessel and (y) that amount which is equal to one hundred and twenty five per centum (125%) of the outstanding balance of the Facility plus interest thereon at any given time, and in the case referred to in sub-clause 6.1.1 (c)) above, for the full value and tonnage of the Vessel (except in the case of oil pollution which shall be covered to the highest limit accepted by first class protection and indemnity associations)) (iii) upon such terms and conditions as shall from time to time be approved in writing by the Mortgagee (iv) with such brokers (hereinafter called the "Approved Brokers") and with such insurance companies and/or underwriters as shall from time to time be approved in writing by the Mortgagee, provided that the insurances against war risks and protection and indemnity risks may be effected by entry of the Vessel, in such war risks and protection and indemnity risks associations and upon such terms as shall from time to time be approved in writing by the Mortgagee and (v) if so required by the Mortgagee, with the Mortgagee named as co-assured (but without, as between the Mortgagor and the Mortgagee, liability on the part of the Mortgagee for premiums or calls).

6.1.3   Prior to the expiry of any of the relevant policies or contracts or entries to notify the Mortgagee in writing of the identity of the brokers (or other insurers) and any protection and indemnity or war risks association through or with whom the Mortgagor proposes to renew all Insurances and prior to the expiry of the relevant policies or contracts or entries expire, to renew all Insurances and upon such renewal to procure that the Approved Brokers and/or the war risks and protection and indemnity associations with which such renewal was effected shall promptly notify the Mortgagee in writing of the terms and conditions of such renewal.

6.1.4   Punctually to pay all premiums, calls, contributions or other sums payable in respect of all such insurances and to produce all relevant receipts when so required by the Mortgagee.

6.1.5 To reimburse the Mortgagee on demand and on a full indemnity basis for all costs, premiums and expenses paid or incurred by the Mortgagee in effecting and maintaining at its absolute discretion, a Mortgagee's Interest Insurance in respect of the Vessel in such amount (not exceeding the amount specified in Clause 12(B) of the Loan Agreement) on such terms and conditions and through such brokers and with such insurers and underwriters as the Mortgagee shall in its absolute discretion think fit.

6.1.6 To arrange for the execution and delivery of such guarantees or indemnities as may from time to time be required by any protection and indemnity or war risks association for or for the continuance of the Vessel's entry.

6.1.7 To procure that the interest of the Mortgagee shall be endorsed upon all slips, cover notes, policies, certificates of entry or other instruments of insurance issued or to be issued in connection with the Insurances, by means of a loss payable clause in such form as the Mortgagee may from time to time approve in writing and by means of a notice of assignment (signed by the Mortgagor) in such form as the Mortgagee may from time to time approve in writing, and to procure that the said slips, cover notes, policies, certificates of entry or other instruments of insurance issued or to be issued shall provide for fourteen (14) days prior written notice to be given to the Mortgagee by the Approved Brokers in the event of cancellation of any of the Insurances.

6.1.8 To procure that the abovementioned notice of assignment of insurances is given to all insurers, clubs and associations providing insurance in connection with the Vessel.

6.1.9 To procure that all instruments of insurance referred to in sub-clause 6.1.7 above as relate to the Insurances shall be deposited with the Mortgagee or with the Approved Brokers and that the Approved Brokers shall (if so required by the Mortgagee) furnish the Mortgagee with certified copies thereof and a letter or letters of undertaking in such form as may from time to time be required by the Mortgagee.

6.1.10 If any of the insurances referred to in clause 6.1.1 form part of a fleet cover, to procure that the Approved Brokers shall undertake to the Mortgagee that they

shall neither set off against any claims in respect of the Vessel any premiums due in respect of other vessels under such fleet cover or any premiums due for other insurances, nor cancel the insurance for reason of non-payment of premiums for other vessels under such fleet cover or of premiums for such other insurances, and shall undertake to issue a separate policy in respect of the Vessel if and when so requested by the Mortgagee.

6.1.11 To procure that the protection and indemnity and/or war risks associations wherein the Vessel is entered or shall be entered shall furnish the Mortgagee with a certified copy of the certificate of entry for the Vessel and a letter or letters of undertaking in such form as may from time to time be required by the Mortgagee together with a certified copy of each certificate of financial responsibility for pollution by oil or other substances issued by such protection and indemnity and/or war risks association in relation to the Vessel.

6.1.12 To furnish the Mortgagee at such reasonable intervals as the Mortgagee shall specify with a detailed report signed by an independent firm of marine insurance brokers appointed by the Mortgagor and approved by the Mortgagee as to the adequacy and terms of the Insurances then in force.

6.1.13 Promptly to furnish the Mortgagee with full information regarding any casualties or other accidents or damage to the Vessel involving an amount in excess of five per centum (5%) of the hull insured value of the Vessel or in consequence whereof the Vessel has or will become a Total Loss.

6.1.14 Not to agree to any variation in the terms of any one or more of the Insurances approved by the Mortgagee without the prior written approval of the Mortgagee nor to do or omit to do any act or voluntarily suffer or permit any act or omission to be done or made whereby any of the Insurances shall or may be invalid, void, voidable, suspended, defeated or unenforceable or any sum paid thereunder shall be rendered repayable in whole or in part.

6.1.15 Not to cause or suffer or permit the Vessel to be engaged in any voyage or to be employed in any manner or to carry any cargo, otherwise than in conformity with the Insurances (including any warranties expressed or implied therein), without first giving written notice to the Mortgagee obtaining the consent of the insurers

concerned and complying with such requirements as to payment of extra premiums or otherwise as the insurers may impose and as may be approved by the Mortgagee.

6.1.16 Not without the prior written consent of the Mortgagee to settle compromise or abandon any claim in respect of one or more of the Insurances aforesaid.

6.1.17 To do all things necessary and provide all documents, evidence and information to enable the Mortgagee to collect or recover any moneys which shall at any time become due in respect of the Insurances.

6.1.18 To notify the Mortgagee promptly:-

6.1.18.1 if any underwriter, insurer or war risks association cancels or gives notice of cancellation of any insurance or entry in respect of the Vessel at least fourteen (14) days before such cancellation is to take effect;

6.1.18.2 of any material alteration in or termination or expiry of any such insurance or entry at least fourteen (14) days before such alteration, termination or expiry is due to take effect;

6.1.18.3 of any default in the payment of any premium or call or failure to renew any such insurance or entry fourteen (14) days prior to the date due for the renewal thereof; and

6.1.18.4 of any act or omission or of any event of which the underwriter or insurer or association has knowledge and which might invalidate or render unenforceable in whole or in part any such insurance or entry.

6.1.19 To apply all amounts receivable in respect of the Insurances as are paid to the Mortgagor for the purpose of making good the loss and repairing all damage in respect of which the said amounts were received.

6.1.20 To comply strictly with the requirements of the United States Oil Pollution Act 1990 (the "Act") and any other Environmental Laws for the time being in force

in any jurisdiction in which the Vessel trades or may or will trade at any time during the Security Period and in particular if the Vessel is to be traded within United States of America waters (200 miles zone) before such trade is commenced and during the entire period during which such trade is carried on:

6.1.20.1    to pay any additional premium required to maintain protection and indemnity cover for oil pollution up to the highest level of cover available to the Mortgagor for the Vessel in the international market;

6.1.20.2    to make all such quarterly or other voyage declarations as may from time to time be required by the Vessel's protection and indemnity association in order to maintain the Vessel's protection and indemnity cover for oil pollution;

6.1.20.3    to obtain a certificate of Financial Responsibility in accordance with the Act and in line with the requirements of the United States Coast Guard.

6.1.21    In addition to and without prejudice to the requirements of sub-clauses 6.1.1 to 6.1.20 of this Clause 6.1, to comply with the provisions of Clause 12 of the Loan Agreement.

6.2    The Mortgagor hereby expressly agrees that the Mortgagee shall be entitled to review the requirements of this Clause 6 from time to time in order to take account of changes in circumstances after the date of this Deed and the Statutory Mortgage (such changes in circumstances to include, without limitation, changes in the Vessel's trading patterns, changes in applicable law and changes in the price and availability of insurance coverage) and to notify the Mortgagor in writing from time to time of any modification to the requirements of this Clause 6 which the Mortgagee shall reasonably specify and which are reasonably standard in the market and any such notification shall be binding on the Mortgagor and shall take effect as an amendment of this Clause 6.

## 7. VESSEL COVENANTS

7.1    The Mortgagor hereby expressly covenants and agrees with the Mortgagee as follows:-

7.1.1    From time to time at the request of the Mortgagee to give notice to any charterer under any charterparty or other contract for the employment of the Vessel or to

any other person by whom the Earnings are or may be payable, of the assignment of Earnings contained in the Assignment in such form as the Mortgagee may request or approve.

7.1.2 To remain liable, under any charterparty or other contract for the employment of the Vessel, to perform all the obligations assumed by it thereunder, it being declared and agreed that the Mortgagee shall not be under any obligation or liabilities under any such charterparty or other contract by reason of the assignment of Earnings contained in the Assignment.

7.1.3 To keep the Vessel registered in the Maltese Ships Register pursuant to the laws of Malta and to procure that the Vessel is permanently registered under the Maltese flag (if the Vessel is not already so registered) not later than one (1) month before her provisional registration is due to expire and not to do or suffer to be done anything whereby the Vessel shall or may lose her character as a Maltese ship, or whereby the registration of the Vessel in the Maltese Ships Register may be defeated or imperiled.

7.1.4 To keep the Vessel her equipment and machinery at all times in a state of complete seaworthy condition and in good running order and repair and to the satisfaction of the Mortgagee and in such a condition as to make her strictly comply with the requirements of any laws of Malta or the Maritime Authorities there and with all regulations and requirements (statutory or otherwise) from time to time applicable to vessels registered in the Maltese Ships Registry or otherwise applicable to the Vessel and comply with the recommendations of the Classification Society in which the Vessel is classed at present or of any other Classification Society in which (with the previous approval of the Mortgagee) she may be classed, in accordance with its terms, and to procure that all repairs to or replacement of any damaged, worn or lost, parts or equipment are effected in such manner (both as regards workmanship and quality of materials) as not to diminish the value of the Vessel.

7.1.5 At all reasonable times and places to permit the Mortgagee and such persons as it shall from time to time appoint for that purpose to enter into and upon the Vessel to view the state and condition thereof and of her cargo and papers and to afford all proper facilities for such inspections.

7.1.6   To pay and discharge all debts, damages, liabilities and outgoings whatsoever which have given or may give rise to maritime or possessory liens (other than Permitted Liens) on or claims enforceable against the Vessel and in the event of any writ or proceeding being issued against the Vessel or the Vessel being attached, arrested or detained by any Court or Tribunal in any part of the world or by any Government or other authority or in the event of detention of the Vessel in the exercise or purported exercise of any such lien (other than Permitted Liens) or claim as aforesaid to free the Vessel from attachment, arrest or detention as quickly as possible and in any event not later than fourteen (14) days from the date such attachment, arrest or detention is first effected.

7.1.7   Not without the prior written consent of the Mortgagee, to execute or register any mortgage or charge on the Charged Assets on the same day or in priority to the Statutory Mortgage or these presents in favour of any person or company other than the Mortgagee and not during the Security Period further to mortgage or charge or assign the Charged Assets to any person or persons or company whatsoever other than the Mortgagee nor sell or otherwise dispose of the Vessel or of any shares therein to any person or company nor hypothecate or attempt to hypothecate any freight or hire moneys.

7.1.8   In the event of the Vessel being requisitioned by the Maltese Government or seized or requisitioned by any other Government or governmental authority forthwith to assign to the Mortgagee all and every rights which the Mortgagor may have to receive any compensation or payment in respect of such seizure or requisition and to take all lawful steps to recover possession of the Vessel.

7.1.9   During any voyage not to permit the Vessel to make any deviation and not to do or omit to do anything at any time whereby any of the Insurances shall become void or voidable in whole or in part.

7.1.10 At all times upon request to give to the Mortgagee full information regarding the Vessel, her classification status, insurance, employment, position and engagement and copy of any charter with names of charterers.

7.1.11 Not during hostilities in any part of the world (whether or not a state of war shall have been formally declared) to employ or permit the Vessel to be

employed in carrying any contraband goods or enter or trade to any zone which is declared a war zone by any government or by the Vessel's War Risks Insurers unless prior written notice is given to the Mortgagee and such special insurance cover as the Mortgagee may require shall have been effected by the Mortgagor at the expense of the Mortgagor.

7.1.12 Not to cause or permit the Vessel to engage in any trade or business which is forbidden by International Law or is otherwise illicit or in carrying illicit or prohibited goods or in any manner whatsoever which shall or may render the Vessel liable to penalty, confiscation, seizure, detention or destruction and to comply with and procure that the Vessel complies with all legal requirements whether imposed by enactment, regulation, law or otherwise, from time to time applicable to vessels registered at ports in Malta or trading to any jurisdiction where the Vessel may, subject to the provisions of this Deed, trade and to have on board the Vessel (as and when legally required) valid certificates showing compliance therewith.

7.1.13 Not without the prior written consent of the Mortgagee to let the Vessel on time charter or consecutive voyage charter or place her under a contract for employment for a period which can exceed twelve (12) months or on terms whereby more than two (2) months' hire is payable in advance or at a rate of remuneration which is below the current market rate and not to demise charter the Vessel for any period whatsoever nor charter or employ the Vessel in any way which might impair the security of the Mortgagee.

7.1.14 Throughout the Security Period to furnish the Mortgagee with the annual audited financial statements of the Mortgagor prepared in accordance with generally accepted accounting principles, as soon as such statements are available and not later than twelve (12) months after the end of the Mortgagor's financial year.

7.1.15 To procure the management of the Vessel, throughout the Security Period, by managers to be approved by the Mortgagee.

7.1.16 Not without the prior written consent of the Mortgagee to:-

7.1.16.1 make or permit to be made any modification to the Vessel in consequence of which her structure, type or performance

characteristics could or might be materially altered or her value reduced by five per centum (5%) or more;

7.1.16.2 remove or replace or permit the removal or replacement of any material part of the Vessel or any equipment in consequence of which the value of the Vessel could or might be reduced by five per centum (5%) or more; or

7.1.16.3 install on the Vessel any equipment owned by a third party which cannot be removed without causing damage to the Vessel.

7.1.17 To submit the Vessel regularly to such periodical or other surveys as may be required for classification purposes and, if so required by the Mortgagee, to supply the Mortgagee with copies of all survey reports issued in respect thereof.

7.1.18 To notify the Mortgagee forthwith by mail, email, telefax or telex of:-

7.1.18.1 any damage to the Vessel requiring repairs the cost of which will or might exceed five per centum (5%) of the hull insured value of the Vessel;

7.1.18.2 any occurrence in consequence of which the Vessel has or may become a Total Loss;

7.1.18.3 any requisition of the Vessel for hire;

7.1.18.4 any requirement or recommendation made by any insurer or classification society or by any competent authority which is not complied with in accordance with its terms;

7.1.18.5 any arrest or detention of the Vessel or any exercise or purported exercise of a lien (other than Permitted Liens) or other claim on the Vessel or the Earnings;

7.1.18.6 any petition or notice of meeting to consider any resolution to wind up the Mortgagor (or any event analogous thereto under the law of its incorporation); and

7.1.18.7   the occurrence of an Event of Default or any event which with the giving of notice or lapse of time or both would or might constitute an Event of Default.

7.1.19   Not without the prior written consent of the Mortgagee to enter into any agreement or arrangement whereby the Earnings may be shared with any other person.

7.1.20   Promptly to pay all tolls, dues and other outgoings whatsoever in respect of the Vessel and to keep or procure the keeping of proper books of account in respect of the Vessel and the Earnings and, as and when the Mortgagee may so require, to make such books available for inspection on behalf of the Mortgagee, and to furnish satisfactory evidence that the wages and allotments and the insurance and pension contributions of the master and crew are being promptly and regularly paid and that all deductions from crew's wages in respect of any tax liability or otherwise as required by law are being properly accounted for and that the master has no claim for disbursements other than those incurred by him in the ordinary course of trading on the voyage then in progress.

7.1.21   Not without the prior written consent of the Mortgagee to put the Vessel into the possession of any person for the purpose of work being done upon her in an amount exceeding or likely to exceed five per centum (5%) of the hull insured value of the Vessel unless such person shall first have given to the Mortgagee a written undertaking, in terms satisfactory to the Mortgagee, not to exercise any lien on the Vessel for the cost of such work or otherwise, or unless such cost is payable by the insurers under the Insurances.

7.1.22   To comply, or procure compliance with, all Environmental Laws and Environmental Approvals applicable or relating to the Vessel, its operation or management and the business of the Mortgagor from time to time.

7.1.23   To notify the Mortgagee forthwith by telefax or telex upon:-

7.1.23.1   any Environmental Claim being made against the Mortgagor and/or the manager, for the time being of the Vessel, or otherwise in connection with the Vessel; and

7.1.23.2   any Environmental Incident occurring.

7.1.24 To keep the Mortgagee advised, in writing on such regular basis and in such detail as the Mortgagee shall require, of the Mortgagor's response to any Environmental Claim made in connection with the Vessel or Environmental Incident.

7.1.25 Within the requisite applicable time limits for vessels of the same type, size, age and flag of the Vessel to comply, or procure that the operator of the Vessel will comply, with -as applicable- all requirements of the International Convention for the Safety of Life at Sea (SOLAS) 1974 as adopted, amended or replaced from time to time including, but not limited to, the STCW95, the ISM Code and/or the ISPS Code (as each is defined in the respective amendment to SOLAS).

7.1.26 In addition to and without prejudice to the requirements of sub-clauses 7.1.1 to 7.1.25 of this Clause 7, to comply with the provisions of Clause 15 of the Loan Agreement relating to the Vessel.

## 8.  POWERS OF MORTGAGEE TO PROTECT SECURITY AND REMEDY DEFAULTS

8.1     Protective action

The Mortgagee shall, without prejudice to its other rights, powers and remedies under any of the Security Documents, be entitled (but not bound) at any time, and as often as may be necessary, to take any such action as it may in its discretion think fit for the purpose of protecting or maintaining the security created by the Statutory Mortgage, this Deed and the other Security Documents, and each and every expense, cost, loss, damage or liability incurred by the Mortgagee for these purposes shall be payable by the Mortgagor on demand, together with interest (as well after as before any judgment) at the Default Rate.

8.2     Remedy of defaults

Without prejudice to the generality of the provisions of Clause 8.1:

8.2.1     if the Mortgagor fails to comply with any of the provisions of Clauses 6.1.1 and 6.1.2 the Mortgagee shall be entitled (but not bound) to effect and thereafter to maintain all such insurances upon the Vessel as in its discretion it may think fit in order to procure the compliance with such provisions or alternatively, to require the Vessel (at the Mortgagor's risk) to remain in, or to proceed to and

remain in a port designated by the Mortgagee until such provisions are fully complied with;

8.2.2 if the Mortgagor fails to comply with any of the provisions of Clauses 7.1.4 or 7.1.16, the Mortgagee shall be entitled (but not bound) to arrange for the carrying out of such repairs, changes or surveys as it may deem expedient or necessary in order to procure the compliance with such provisions; and

8.2.3 if the Mortgagor fails to comply with any of the provisions of Clause 7.1.6 the Mortgagee shall be entitled (but not bound) to pay and discharge all such debts, damages, liabilities and outgoings as are therein mentioned and/or to take any such measures as it may deem expedient or necessary for the purpose of securing the release of the Vessel in order to procure the compliance with such provisions

and all costs, fees, expenses, charges, disbursements and losses whatsoever attributable to the exercise by the Mortgagee of any such powers shall be payable by the Mortgagor to the Mortgagee on demand together with interest (as well as before as after judgment) at the Default Rate.

8.3 Any settlement or discharge under the Mortgage and/or this Deed between the Mortgagee and the Mortgagor shall be conditional upon no security or payment to the Mortgagee by the Mortgagor or any other person being avoided or set aside or ordered to be refunded or reduced by virtue of any law, regulation or provision relating to liquidation, bankruptcy, insolvency, administration or similar proceedings for the time being in force and, if such condition is not satisfied, the Mortgagee shall be entitled to recover from the Mortgagor on demand and the Mortgagor shall be obliged to pay to the Mortgagee the value of such security or the amount of any such payment as if such settlement or discharge had not occurred.

8.4 The Mortgagee shall not be bound to enforce any other security before enforcing the security created by the Mortgage and/or this Deed.

## 9. EVENTS OF DEFAULT

9.1 The security constituted by these presents and by the Statutory Mortgage shall become immediately enforceable, if any of the following events shall occur:-

9.1.1   If any sum of money whatsoever payable by the Mortgagor to the Mortgagee under the Security Documents or any of them is not paid at the time, at the place and in the currency therein stipulated for payment of the same.

9.1.2   If any of the Insurances on the Vessel are cancelled due to non-payment of premiums or the Vessel ceases to be insured in accordance with the provisions of the Security Documents.

9.1.3   If the Mortgagor or any other party to the Security Documents (other than the Mortgagee) make default in the due and prompt performance, observance and fulfillment of any of the terms or conditions of or the covenants or obligations on their part to be observed and performed contained in the Security Documents or any of them (not being a default which falls within paragraphs 9.1.1 and 9.1.2 above) and such default is not capable of remedy, or, if capable of remedy, is not remedied within fourteen (14) days after written notice by the Mortgagee requesting remedial action.

9.1.4   If any of the representations, warranties or statements made by the Mortgagor or any other party to the Security Documents (other than the Mortgagee), in one or more of the Security Documents or in connection herewith or therewith or any notice, certificate or statement delivered or made pursuant hereto or thereto is when made, incorrect or inaccurate or misleading in any material respect.

9.1.5   If a petition is filed by or against the Mortgagor or any other party to the Security Documents (other than the Mortgagee) or an order is made on any petition or an effective resolution is passed or proceedings are started for the winding up or dissolution of the Mortgagor or any other party to the Security Documents (other than the Mortgagee), except a resolution for winding-up with a view to reconstruction of which the Mortgagee shall have previously approved, or if a liquidator or receiver or similar officer is appointed of all or any material part of the undertaking or assets of the Mortgagor or any other party to the Security Documents (other than the Mortgagee) or if the Mortgagor or any other party to the Security Documents (other than the Mortgagee) becomes insolvent or suspends payment or compounds or arranges or endeavours or threatens to compound or arrange with its creditors.

9.1.6   If there is a material adverse change in the financial situation of the Mortgagor or if the Mortgagor suspends or ceases or threatens to suspend or cease to carry on its business.

9.1.7   If any of the Security Documents shall at any time and for any reason become invalid or unenforceable or otherwise shall cease to be in full force and effect or if the validity or enforceability of any of the Security Documents shall at any time and for any reason be contested by any party thereto (other than the Mortgagee), or it becomes impossible or unlawful at any time for the Mortgagor or any other party to the Security Documents (other than the Mortgagee) to fulfil any of the covenants or obligations expressed to be assumed by them in any of the Security Documents or for the Mortgagee to exercise the rights or any of them vested in it under any of the Security Documents or otherwise.

9.1.8   If the Vessel shall be seized or taken possession of by enemies of Malta or by or through the authority of any foreign government, pirates or others or if she engages in any trade or business which shall have been or may be declared illegal or which may render her liable to confiscation seizure detention or destruction or if she fails to act in accordance with any warning or instructions issued by any competent authority of any government or any international authority or control or any ship operating thereunder or commits or permits any breach of the rules and regulations for the time being laid down by any competent authority of any government or any international authority or control in any part of the world.

9.1.9   If the Vessel is arrested or detained or shall become subject to possessory or maritime liens (other than Permitted Liens) and is not released from such arrest or detention or such liens are not removed within fourteen (14) days from the date such arrest or detention was effected or from the date of such lien being brought to the notice of the Mortgagor, or if an order for the sale of the Vessel is made by a court of competent jurisdiction or if the Mortgagor shall cease to retain possession and/or control of the Vessel for a period in excess of fourteen (14) days.

9.1.10   If the Vessel shall become a Total Loss or be abandoned and the Mortgagee does not receive within thirty (30) days, following the occurrence of such Total Loss or abandonment, insurance proceeds relating to such Total Loss or abandonment

in an amount not less than the amount for which the Vessel is required to be insured pursuant to the relevant Security Documents or alternate security satisfactory to the Mortgagee.

9.1.11   If the Mortgagor shall fail to account to the Mortgagee for all freights or earnings earned in respect of the Vessel or to procure satisfactory evidence that the wages of the master and crew are being regularly paid, within fourteen (14) days of written request of the Mortgagee so to do.

9.1.12   If any governmental or other licence, authorisation, consent or approval at any time necessary to enable the Mortgagor or any other party to the Security Documents (other than the Mortgagee) to comply with its obligations under the Security Documents or any of them or to enable the operation of the Vessel, is revoked, terminated, withheld or materially (in the opinion of the Mortgagee) modified or is otherwise not granted or fails to remain in full force and effect.

9.1.13   If the Mortgagor shall permit or do or cause to be done any act or thing which may make void or voidable any of the Insurances of the Vessel or any part thereof or the registration of the Vessel and/or the Statutory Mortgage in the Maltese Ships Register or if and whenever the Vessel and/or the Statutory Mortgage shall cease to be registered in the Maltese Ships Register.

9.1.14   If the Mortgagor shall permit or do or omit to do or cause to be done or omitted to do any act or shall incur or cause to be incurred any expense which shall (in the opinion of the Mortgagee) imperil or affect the security of the Mortgagee contained in the Statutory Mortgage and/or this Deed and/or any other Security Document.

9.1.15   If any of the Events of Default specified in Clause 20 of the Loan Agreement or any event of default howsoever defined or described (or any event which with the giving of notice or lapse of time or any other applicable condition or any combination of the foregoing would constitute such an event of default) under any of the other Security Documents shall occur.

## 10. ENFORCEMENT AND MORTGAGEE'S POWERS

10.1 When and at any time after an Event of Default shall have occurred and the Statutory Mortgage and this Deed shall have become immediately enforceable pursuant to Clause 9 hereof the Mortgagee shall be entitled, by demand made on or notice given to the Mortgagor, to declare the Indebtedness to be due and payable immediately or in accordance with such demand or notice whereupon the Indebtedness shall become so due and payable together with interest at the Default Rate and (whether or not the Mortgagee shall have made such demand or given such notice and irrespective of whether any notice has been given pursuant to Clause 20 of the Loan Agreement or any demand has been made under the Guarantees or either of them) the Mortgagee shall become forthwith entitled, as and when it may see fit, to put into force and exercise in relation to the Charged Assets or any part thereof all or any of the rights, powers and remedies possessed by it (whether at law, by virtue of the Statutory Mortgage and this Deed or otherwise) as mortgagee and chargee of the Charged Assets and in particular (without limiting the generality of the foregoing):

10.1.1 To take possession of the Vessel.

10.1.2 To recover and collect all freights, passage moneys, remuneration for salvage or towage services, hire moneys and all other income or earnings then due or to become due to the Mortgagor in respect of the Vessel and to give a good receipt therefor on behalf of the Mortgagor.

10.1.3 To require that all policies contracts and other records relating to the Insurances of the Vessel (including details of and correspondence concerning outstanding claims) be forthwith delivered to such brokers as the Mortgagee may nominate.

10.1.4 To collect, recover, compromise and give a good discharge for all claims then outstanding or thereafter arising under any policy or contract of insurance (which expression shall include all entries in a protection and indemnity or war risks association) relating to the Vessel and to take over or institute all such proceedings in connection therewith as the Mortgagee in its absolute discretion thinks fit and to permit the brokers through whom collection or recovery is effected to charge and retain the usual brokerage therefor.

10.1.5    To discharge, compound, release or compromise claims in respect of the Vessel which have given or may give rise to any charge or lien on the Vessel having priority over the Statutory Mortgage or which are or may be enforceable by proceedings against the Vessel.

10.1.6    To sell the Vessel or any share therein, with or without the benefit of any charterparty or other engagement, by public auction or private contract, at any place in the world, with or without advertisement, for cash or on credit or otherwise and upon such terms as the Mortgagee in its absolute discretion may determine with power to postpone any such sale and without being answerable for any loss occasioned by such sale or resulting from postponement thereof, and at any such public sale to purchase the Vessel and to set-off the purchase price against all sums whatsoever due to it under or by virtue of the Statutory Mortgage and/or this Deed.

10.1.7    To manage the Vessel and to insure, maintain and repair the Vessel and to hold, lay up, lease, charter, operate or otherwise use the Vessel in such manner and for such period as the Mortgagee in its absolute discretion deems expedient, accounting only for the net proceeds (if any) of such use, and for the purposes aforesaid to do all acts and things incidental or conducive thereto in all respects as if the Mortgagee was the owner of the Vessel without being responsible for any loss thereby incurred.

10.1.8    To recover from the Mortgagor on demand all expenses, payments, disbursements, costs, losses and damages incurred by the Mortgagee in or about or incidental to the exercise by it of any of the powers aforesaid with interest thereon at the Default Rate.

10.2    The Mortgagee shall not be obliged to make any enquiry as to the nature or sufficiency of any payment received by it under the Statutory Mortgage and this Deed (or either of them) or to make any claim under this Deed or to enforce any rights and benefits assigned to the Mortgagee by this Deed or to which the Mortgagee may at any time be entitled hereunder.

10.3    Neither the Mortgagee nor its agents, managers, officers, employees, delegates and advisers shall be liable for any expense, claim, liability, loss, cost, damage or expense

incurred or arising in connection with the exercise or purported exercise of any rights, powers and discretions under the Statutory Mortgage and this Deed (or either of them) in the absence of gross negligence or willful misconduct.

10.4    The Mortgagee shall not by reason of the taking possession of the Vessel be liable to account as mortgagee-in-possession or for anything except actual receipts or be liable for any loss upon realization or for any default or omission for which a mortgagee-in-possession might be liable.

## 11. PROTECTION OF THIRD PARTIES

Any sale of the Vessel or any share therein by the Mortgagee pursuant to Clause 10 hereof or as a result of judicial proceedings shall operate to divest all the legal and beneficial interest whatsoever of the Mortgagor in the Vessel and shall bar the Mortgagor its successors and permitted assigns and all persons claiming by through or under them.  No purchaser shall be bound to enquire whether the Mortgagee's power of sale has arisen in the manner herein provided and the sale shall be deemed to be within the power of the Mortgagee and the receipt of the Mortgagee for the purchase money shall effectively discharge the purchaser who shall not be concerned with the manner of application of the proceeds of sale or be in any way answerable therefor.

## 12. APPLICATION OF PROCEEDS

12.1 All moneys received or recovered by the Mortgagee in respect of:

12.1.1    sale of the Vessel or any share or interest in the Vessel;

12.1.2    recovery under the Insurances (other than any such sum or sums as may have been  received by the Mortgagee in accordance with the proviso to clause 3.1 of the Assignment in respect of a Major Casualty and which has or have been paid over to the Mortgagor as therein provided); or

12.1.3    the net profits arising out of the employment of the Vessel by or on behalf of the Mortgagee pursuant to Clause 10.1.7 hereof,

12.1.4    Requisition Compensation

shall be held by the Mortgagee upon trust in the first place to pay and discharge all costs and expenses whatsoever incurred in or about and incidental to the receipt or recovery of such moneys and the balance shall be applied in the following manner:

(i)      in or towards payment of all moneys expended or liabilities incurred by the Mortgagee in respect of costs, expenses, fees or charges relating to the negotiation, preparation, engrossment, execution and (if required) registration of the Security Documents or in respect of the protection, maintenance or enforcement of the security they create;

(ii)     in or towards payment of any part of the Indebtedness which has fallen due and payable, whether by reason of payment demanded or otherwise, in such order of application as the Mortgagee may think fit;

(iii)    at the Mortgagee's discretion, in retention on suspense account of such amount as the Mortgagee may consider appropriate to secure the discharge of any part of the Indebtedness not then due and payable, and, upon the same becoming due and payable, in or towards the discharge thereof in accordance with the foregoing provisions of this Clause 12;

(iv)    the balance (if any) shall be paid to the Mortgagor or to whosoever may be entitled thereto.

12.2    In the event that the moneys received or recovered by the Mortgagee as referred to in clause 12.1 are insufficient to pay in full the whole of the Indebtedness, the Mortgagee shall be entitled to collect the shortfall from the Mortgagor or any other person liable therefor for the time being.

12.3    Any moneys received hereunder by the Mortgagee in respect of the Earnings shall, if received after the happening of any of the Events of Default specified in Clause 9. hereof or if such moneys represent damages in respect of breach of any charterparty, contract of affreightment or other contract of employment of the Vessel, be paid to the Mortgagee and shall be held by the Mortgagee upon trust to be applied in the manner specified in Clause 12.1.

## 13. NO WAIVER

No course of dealing between the Mortgagee and the Mortgagor or any delay on the part of the Mortgagee in exercising any rights hereunder shall operate as a waiver of any rights of the Mortgagee.

## 14. DELEGATION

The Mortgagee may delegate to any person or persons all or any of the trusts powers and discretions vested in it by the Statutory Mortgage and these presents and any such delegation may be made upon such terms and conditions and be subject to such regulations (including power to sub-delegate) as the Mortgagee may in its absolute discretion think fit.

## 15. POWER OF ATTORNEY

The Mortgagor hereby irrevocably appoints the Mortgagee (or any other person which at any time may be nominated by the Mortgagee), as its Attorney for the purpose of doing in its name all acts which the Mortgagor itself could do with reference to the Vessel but the Mortgagee agrees that it will not exercise such power unless an Event of Default shall have occurred. The exercise of such power by the Mortgagee shall not put any person dealing with it upon any enquiry as to whether there has been such Event of Default nor shall such person be in anyway affected by notice that there has been no default and the exercise by the Mortgagee of this power shall be conclusive evidence of its right to exercise such power.

In order to assist the Mortgagee to obtain the full benefit of this clause 15, the Mortgagor irrevocably and unconditionally undertakes to execute a Power of Attorney in favour of the Mortgagee in the form set out in Annex I **PROVIDED THAT** such Power of Attorney shall not be exercisable by or on behalf of the Lender until the Mortgage and this Deed shall have become immediately enforceable pursuant to Clause 9.

## 16. WAIVER

It is hereby further agreed that the Mortgagee may from time to time and at all times waive either unconditionally or on such terms and conditions as to it shall seem expedient any breach by the Mortgagor of any of the covenants stipulations or conditions respectively contained or implied in the Statutory Mortgage or these presents but without prejudice to the powers rights

and remedies herein or in the Statutory Mortgage contained for the enforcement thereof PROVIDED ALWAYS AND IT IS HEREBY AGREED AND DECLARED that any waiver by or neglect or forbearance of the Mortgagee to require and enforce payment of any moneys hereby or by the Statutory Mortgage secured and any time which may be given to the Mortgagor by the Mortgagee shall not in any way prejudice or affect the right of the Mortgagee afterwards to act strictly in accordance with the powers conferred upon the Mortgagee under this Deed of Covenants or the Statutory Mortgage.

## 17. INDEMNITY

17.1    The Mortgagor hereby agrees and undertakes to indemnify and keep harmless the Mortgagee and every agent or attorneys appointed pursuant hereto in respect of and against any and all liabilities, obligations, claims, losses, taxes, duties, fees, charges and expenses suffered, incurred or made by the Mortgagee or such agent or attorney:

17.1.1    in the execution or purported execution of any rights, powers or discretions vested in the Mortgagee pursuant hereto and to the Statutory Mortgage; or

17.1.2    in preserving, maintaining, protecting, enforcing or attempting to enforce the Mortgagee's rights hereunder and/or under the Statutory Mortgage; or

17.1.3    as a result of or in connection with any Environmental Claim being made against the Mortgagee or otherwise howsoever arising out of any Environmental Incident.

17.2    If, under any applicable law or regulation, and whether pursuant to a judgment being made or registered against the Mortgagor or the liquidation of the Mortgagor or for any other reason, any payment under or in connection with the Statutory Mortgage and this Deed (or either of them) is made or falls to be satisfied in a currency ("the payment currency") other than the currency in which such payment is due under or in connection with the Statutory Mortgage and this Deed ("the contractual currency"), then to the extent that the amount of such payment actually received by the Mortgagee, when converted into the contractual currency at the rate of exchange, falls short of the amount due under or in connection with the Statutory Mortgage and this Deed, the Mortgagor, as a separate and independent obligation, shall indemnify and hold harmless the Mortgagee against the amount of such shortfall.  For the purposes of this Clause 17.2, "rate of

exchange" means the rate at which the Mortgagee is able on the date of such payment (or, if it is not practicable for the Mortgagee to purchase the contractual currency with the payment currency on the date of such payment, at the rate of exchange as soon afterwards as it is practicable for the Mortgagee to do so) to purchase the contractual currency with the payment currency and shall take into account any premium and other costs of exchange with respect thereto.

## 18. COSTS

18.1 The Mortgagor covenants and agrees to pay to the Mortgagee on demand all costs, charges, expenses, losses, disbursements and liabilities incurred or to be incurred and all moneys paid by the Mortgagee, (with interest thereon at the Default Rate from the time they were incurred by the Mortgagee until receipt of full payment whether before or after judgment) in connection with:-

18.1.1 The negotiation, preparation, engrossment, execution and registration of the Statutory Mortgage and this Deed and of any other Security Documents or any other documents which may now or hereafter be required by the Mortgagee or its lawyers for the purpose of giving effect to the terms hereof.

18.1.2 The preservation or enforcement or attempted preservation or enforcement of the security or any rights and powers of the Mortgagee hereunder or under the Statutory Mortgage or under any applicable law.

18.1.3 The exercise by the Mortgagee of any of its rights, powers and discretions hereunder or under the Statutory Mortgage or under any applicable law.

## 19. NOTICES

All notices and other communications to be made hereunder upon either party hereto shall be deemed duly served three (3) business days after being posted if sent by mail or on the date on which they were despatched if sent by mail, email, telex or telefax (or, if sent after normal business hours, on the next Banking Day following such date), provided that they are addressed to the Mortgagor c/o Interorient Navigation Company Limited, 142 Franklin Roosevelt, 3011 Limassol, Cyprus (if by letter) or to telefax number +357 25 575895 in Cyprus (if by telefax) or to the email address <S.Theophilides@interorient.com.cy> (if by email) and to the Mortgagee

at its address aforesaid in Limassol, Cyprus (if by letter) or to telefax number +357 25 502478 in Cyprus (if by telefax) or to the email addresses <n.Gavriel@hellenicbank.com> and <N.Thrasyvoulou@hellenicbank.com> (if by email), or, in each case, to such other address and/or telefax numbers and/or email addresses as is notified in writing by one party to the other under this Deed.

## 20. CUMULATIVE REMEDIES

Each and every power and remedy in this Deed and/or the Statutory Mortgage specifically given to the Mortgagee shall be cumulative and shall be in addition to every other right, power and remedy in this Deed and/or the Statutory Mortgage and the other Security Documents specifically given or now or hereafter existing at law, in equity, admiralty, or by statute, and each and every right, power and remedy whether specifically in this Deed and/or the Statutory Mortgage given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and the exercise or the beginning of the exercise of any right, power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy. It is expressly understood and agreed by the Mortgagor and the Mortgagee that no delay or omission by the Mortgagee in the exercise of any right or power or in the pursuit of any remedy accruing upon any Event of Default shall impair any such right, power or remedy or be construed to be a waiver thereof or of any such Event of Default or to be an acquiescence therein, nor shall be acceptance by the Mortgagee of any security or any payment on account of the Indebtedness be deemed a waiver of any right to take advantage of any future Event of Default. The Mortgagee may, without affecting the validity of the Mortgage, at any time and from time to time without the consent of the Mortgagor, release or discharge any person liable to the Mortgagee in respect of the Indebtedness or in respect to any guarantees, obligations or liabilities in connection therewith and may take, renew or release negotiable instruments and other evidence of or security for the Indebtedness without affecting the liability of the Mortgagor under the Statutory Mortgage and this Deed or the rights of the Mortgagee thereunder and hereunder.

## 21. SEVERABILITY

If any one or more of the provisions of these presents is or at any time for any reason becomes invalid void or otherwise unenforceable under the laws of any jurisdiction or pursuant to a decision or declaration of a competent Court of competent jurisdiction such invalidity or non-enforceability shall not affect the validity or enforceability of any other provision or provisions of this Deed of Covenants or the validity or enforceability of this Deed of Covenants as a whole.

## 22. FURTHER ASSURANCES

22.1 The Mortgagor undertakes at its own expense to execute sign perfect and do any or any further assurances, documents, acts and things for more effectually mortgaging the Vessel to the Mortgagee and for carrying out the purposes of this security and the implementation of the Mortgagor's obligations hereunder as in the opinion of the Mortgagee may be required or are desirable and in connection with any assignment and/or transfer of this Deed of Covenants and the Statutory Mortgage which the Mortgagee may execute the Mortgagor undertakes to co-operate fully and to execute any documents required in connection therewith and to join in any tripartite agreement with the Mortgagee and any assignee and/or transferee for the purpose of ensuring that the assignee and/or transferee receives the full benefit of all the Mortgagor's covenants hereunder and of the Mortgagee's rights resulting from this Deed of Covenants and the Statutory Mortgage.

22.2 The Mortgagor covenants forthwith and at its own cost to register or cause to be registered the Statutory Mortgage in the Mortgage Register at the Maltese Ships Register and to produce to the Mortgagee a Transcript of the Vessel's Register certifying that the Statutory Mortgage is first in time and priority.

## 23. TAXES

If at any time taxes, dues, duties, fees or other charges should be levied or imposed anywhere on or in respect of any moneys or interest payable hereunder and/or under the Statutory Mortgage or if there is any change in any applicable law or regulation or the interpretation thereof by any authority charged with the administration thereof the result of which is to increase the costs to the Mortgagee of granting or continuing to grant the Facility and/or the Other Facilities or any of them or any part thereof under the Loan Agreement and/or (as the case may be) the Other Agreements or any of them or reduce the amount receivable by the Mortgagee whether by way of principal or interest or otherwise hereunder or under the Loan Agreement and/or the Other Agreements or any of them and/or the Guarantees or either of them, then the Mortgagor shall on demand pay to the Mortgagee such amount as shall compensate the Mortgagee for such additional taxes or cost or reduction. If under the provisions of the relevant law this stipulation could not be enforced the rate of interest shall be automatically increased so as to make good the loss incurred by the Mortgagee through such taxes or increased cost or reduction.

## 24. ASSUMPTION OF MANAGEMENT

If the Mortgagee shall take possession of the Vessel pursuant to the powers granted herein or by law and shall assume the management of the Vessel, the Mortgagee shall give notice of such assumption of management as required under Maltese law (if applicable).

## 25. MISCELLANEOUS

25.1   The Mortgagee shall be at liberty so long as any moneys may be due under the Security Documents and is hereby empowered in its own name and/or in the name of the Mortgagor or owners of the Vessel for the time being, to demand sue for and receive and give receipts for all moneys due to the Mortgagor in connection with the Vessel and to institute such legal proceedings as the Mortgagee may think proper and to defend any legal proceedings brought against the Vessel or against the Mortgagor or owners of the Vessel for the time being.

25.2   No express provisions in any of the Security Documents relating to the rights or remedies of the Mortgagee shall in any way invalidate or deprive the Mortgagee of any of its just or legal rights as the mortgagee of the Vessel according to the laws of Malta but such express provisions shall be interpreted so far as it is permissible by giving to the Mortgagee extended or better rights and privileges.

25.3   All moneys payable hereunder shall be paid to the Mortgagee free and clear of any taxes, dues, levies, fees, imposts, or any charges of any kind whatsoever to an account to be nominated by the Mortgagee.

25.4   The Mortgagee shall not be concerned to see or enquire into the powers of the Mortgagor or its directors or agents acting or purporting to act on its behalf and all moneys stated to be owing to the Mortgagee under the Security Documents shall be deemed to form part of the moneys secured hereby and by the Statutory Mortgage, even though the Mortgagor or its directors or agents as aforesaid have acted in excess of their powers or if their actions have been in any way irregular or defective or informal.

25.5   Notwithstanding that this Deed is expressed to be supplemental to the Statutory Mortgage it shall continue in full force and effect after any discharge of the Statutory Mortgage.

25.6    Subject to the provisions of Clause 23 (Transfer) of each of the Loan Agreement and the Other Loan Agreement and the corresponding provisions in the Other Borrower B Agreements, the Mortgagee may assign and/or transfer all or any of its rights under the Statutory Mortgage and this Deed without prior notice to or the consent of the Mortgagor and such assignment and/or transfer shall take effect on written notice thereof being given by the Mortgagee to the Mortgagor and to the Registrar of Ships at the port of registry of the Vessel and for the purpose of giving effect to this provision the Mortgagee is hereby appointed Attorney-in-fact of the Mortgagor to execute on behalf of the Mortgagor any deed or document recording such assignment and/or transfer and the Mortgagor hereby further agrees that on request and at the expense of the Mortgagee it will join in and sign or execute any such deed of assignment and/or transfer reasonably required by the Mortgagee and will accept the assignee and/or transferee named therein as though such assignee and/or transferee was a party hereto and to the Statutory Mortgage in lieu of the Mortgagee.

25.7    The Mortgagor shall not be entitled to assign or transfer any of its rights or obligations under the Statutory Mortgage or this Deed to any other person or company without the prior written consent of the Mortgagee which shall not be unreasonably withheld or delayed.

## 26. LAW AND JURISDICTION

26.1    This Deed shall be governed by and construed in accordance with the laws of Malta.

26.2    For the benefit of the Mortgagee, the parties hereto irrevocably agree that any legal action, suit or proceedings (the "Proceedings") in connection with the Statutory Mortgage and/or this Deed may be brought in the courts of Malta or the Republic of Cyprus or in the courts of any other country chosen by the Mortgagee, each of which shall have jurisdiction to settle any disputes arising out of or in connection with the Statutory Mortgage and/or this Deed and the Mortgagor hereby irrevocably and unconditionally submits to the jurisdiction of such courts. The Mortgagor hereby irrevocably agrees that, for the purpose of Proceedings in any country chosen by the Mortgagee other than Malta, any writ, notice, or judgment or other legal process or document issued out of such courts shall be sufficiently served upon the Mortgagor, if served upon Interorient Navigation Company Limited, at 142 Franklin Roosevelt, 3011 Limassol, Cyprus, whom the Mortgagor hereby appoints and empowers as its authorized

process agent for such purpose. If any legal action or proceeding arising out of or in connection with the Mortgage or this Deed or the other Security Documents is begun in Malta any writ, judgment, notice of proceeding or other legal process shall sufficiently be served on the Mortgagor if served on or delivered to Ganado Services Ltd of 171 Old Bakery Street, Valletta, Malta who the Mortgagor hereby nominates as its attorney in Malta for these purposes. The submission to such jurisdiction shall not (and shall not be construed so as to) limit the right of the Mortgagee to take proceedings against the Mortgagor in any other court of competent jurisdiction nor shall the taking of proceedings in any one or more jurisdictions preclude the taking of proceedings in any other jurisdiction, whether concurrently or not. The parties further agree that only the courts of the Republic of Cyprus and not those of any other State shall have jurisdiction to determine any claim which the Mortgagor may have against the Mortgagee arising out of or in connection with the Statutory Mortgage and/or this Deed.

26.3    Without prejudice to the generality of Clause 26. 2 the Mortgagee shall have the right to arrest and take action against the Vessel at whatever place the Vessel shall be found lying and for the purpose of any action which the Mortgagee may bring before the Courts of such jurisdiction or other judicial authority and for the purpose of any action which the Mortgagee may bring against the Vessel any writ, notice, judgment or other legal process or documents may (without prejudice to any other method of service under applicable law) be served upon the master of the Vessel (or upon anyone acting as the master) and such service shall be deemed good service on the Mortgagor for all purposes.

27.    ENVIRONMENT

27.1    Except as may already have been disclosed by the Mortgagor in writing to, and acknowledged in writing by, the Mortgagee, the Mortgagor represents and warrants to the Mortgagee as follows:

27.1.1 the Mortgagor and (to the best of the Mortgagor's knowledge) its Environmental Affiliates have complied with the provisions of applicable Environmental Laws, except where non-compliance would not have a Material Adverse Effect;

27.1.2 the Mortgagor and (to the best of the Mortgagor's knowledge) its Environmental Affiliates have obtained all requisite Environmental Approvals and are in compliance with such Environmental Approvals, except where the failure to obtain or comply with any such Environmental Approvals would not have a Material Adverse Effect;

27.1.3 neither the Mortgagor nor (to the best of the Mortgagor's knowledge) any of its Environmental Affiliates is facing any Environmental Claim which alleges that the Mortgagor is not in compliance with applicable Environmental Laws or Environmental Approvals, where such non-compliance would have a Material Adverse Effect;

27.1.4 there is no Environmental Claim pending or, to the best of the Mortgagor's knowledge, threatened, which would have a Material Adverse Effect; and

27.1.5 there has been no Release of Material of Environmental Concern except where such event would not have a Material Adverse Effect.

27.2 The Mortgagor covenants with the Mortgagee as follows:

27.2.1 it shall not trade within any area if the Mortgagor cannot or does not comply with all Environmental Laws applicable in that area, and that it shall require that none of its Environmental Affiliates trade within any area if the Environmental Affiliate cannot or does not comply with all Environmental Laws applicable in that area which relate to the Vessel or its operation or its carriage of cargo, except where such noncompliance would not have a Material Adverse Effect;

27.2.2 it shall, upon the request of the Mortgagee, conduct and complete all reasonably necessary investigations, studies, sampling, audits and testing required in connection with any known (or threatened) Release of Material of Environmental Concern which would have a Material Adverse Effect; and

27.2.3 it shall, promptly upon the occurrence of any of the following events, provide to the Mortgagee a certificate of an officer of the Mortgagor or of the Mortgagor's agents specifying in detail the nature of such event and the proposed response of the Mortgagor or Environmental Affiliate concerned:

## ANNEX I

## POWER OF ATTORNEY

By these presents, we, the undersigned **ORIENT ALLIANCE SHIPPING COMPANY LIMITED** of 171 Old Bakery Street, Valletta, Malta do hereby nominate and appoint **HELLENIC BANK PUBLIC COMPANY LIMITED**, whose registered office is at Corner Limassol & Athalassa Avenue, Nicosia, Cyprus, acting through its branch at 131 Arch. Makarios Avenue, 2nd Floor, 3508 Limassol, Cyprus as our Special Attorney and authorise it to apply for the closure of the Maltese Register of the m.v. "ORIENT ALLIANCE" in terms of Section 28 of the Merchant Shipping Act, Cap. 234 in our name and on our behalf and to pay all such fees, make all such declarations and receive all such certificates, including the Deletion Certificate, as may be necessary for the proper fulfilment of the above mandate.

Our Attorney is authorised to delegate all his power hereunder in writing.

This mandate is granted in the interest of and as part of the security of **HELLENIC BANK PUBLIC COMPANY LIMITED** and is irrevocable.

This the      day of [   ], 2015.

_____

for and on behalf of
**ORIENT ALLIANCE SHIPPING COMPANY LIMITED**

In the presence of:      _____

**ANNEX H**

---

# GANADO SERVICES LIMITED

### 171, Old Bakery Street, Valletta, Vlt 1455, Malta

---

### LETTER OF ACCEPTANCE FOR SERVICE OF PROCESS PURPOSES

**HELLENIC BANK PUBLIC COMPANY LIMITED**
131 Arch. Makarios Avenue,
2nd Floor, 3508
Limassol,
Cyprus

**DATE: ................., 2015**

Dear Sirs,

**RE : m.v. Orient Alliance**

We refer to the loan agreement (the **"Loan Agreement"**) dated the ............ between yourselves as mortgagee on the one hand and Orient Alliance Shipping Company Limited of 171 Old Bakery Street, Valletta, Malta (the **"Owner"**) as borrower on the other relating to a loan facility in the aggregate amount of United States Dollars twenty million five hundred thousand (USD20,500,000.00)secured by a first priority Maltese mortgage in your favour over the above-captioned Vessel owned by the Owner. Words and expressions defined in the Loan Agreement shall have the same meaning in this letter.

We are pleased to confirm that we accept our appointment as service of process agent and as such to receive, on behalf of the Owner, service of process issued by the Maltese courts or tribunals under Clause 26.2 of the Deed of Covenants dated the [*Insert date*] and executed by the Owner in favour of yourselves and also to promptly forward to the Owner, at the address specified in said Deed, copies of any legal process, summons, notices or other documents received by the undersigned as mandatory for service as aforesaid, subject to the conditions that:

(a) We will not be held personally responsible for any costs and/or fees connected with and incidental thereto; and

(b) We shall be at liberty to terminate the appointment at our discretion and we shall notify you of any such termination provided that should the Owner fail to pay to us the related fees for the purpose of acting as agent for service of process in Malta, we agree not to terminate our said appointment without giving you reasonable notice to pay such funds and a reasonable period to effect payment.

We hereby undertake to notify you forthwith in the event that we shall cease to be located at the above-captioned address and to advise you forthwith of any new address.

Yours faithfully,

_____